Thank you, Your Honor. May it please the Court, I'm Mayor Fedder. I represent the Appellant and Cross-Appellee Prospect. I'm reserving three minutes of my time for rebuttal. Go ahead. Your Honors, this is a case in which an arbitration panel changed their decision on the scope of liability after making a final decision. Then they went back and broadened the liability. And in doing so, they openly said, in their order explaining it, that we made a mistake and we're correcting it. The basic question is whether that's something that's possible under the functus officio doctrine and Rule 50 of the AAA rules. Rule 50 is largely the same as Rule, I think it's 48 in the Verizon case. Basically says there are extremely narrow grounds for correcting a mistake, clerical, typographical, and computational errors. And arbitrators can't revisit a question once they've decided it. An important thing about the functus officio doctrine is that, as Verizon explains, when the parties include in their arbitration agreement the AAA rules that include this Rule 50, in this case, its limit on correcting mistakes, they are effectively adopting, by contract, the functus officio doctrine. So I think the question here probably is whether they're actually correcting a mistake or clarifying an ambiguity, right? Very much so, Your Honor. And the magistrate judge, to his credit, spent a lot of time and a lot of effort on that question. But nonetheless, his approach to it, like the arbitrator's approach to it, was fundamentally wrongheaded in the sense that what he ended up with was not something that in ordinary English anyone would call an ambiguity. You end up with a mistake, and he's pretty... Is there not an ambiguity only if you focus on the section called holding? Well, that's true, Your Honor, but I think unless the doctrine is turned into what's basically just a semantic exercise, that's what you have to focus on. It's like... Let me follow up on that. Sure. The holding section says, based on the findings of facts and conclusions of law stated below, why doesn't that incorporate the findings of facts and conclusions of law that are below? Well, I think one way to understand that, I have a couple of answers for you. One is if you just think about, let's say, a district court opinion that could be written in much the same way, opinion and order issued together, the order of the court may well say it's based on whatever it is below, but if the holding is, I dismiss counts three, four, and five, and one of the parties wants to come back and say, you know, your reasoning would have supported something different. Well, but if the holding says, I dismiss counts three, four, and five, so in your hypo, is there a separate order? No, it's... So it's in the same opinion. Yeah, opinion and order, but here's, let me get to my second part of my answer. I mean, I think that analogy is a useful one, but it's also, the doctrine is not that kind of, it would turn it into something of a semantic exercise, when really what it is, is you are, there's a principle here. Once they've made a decision, they can't change it, and if you broaden out the scope of what a decision is, to include every bit of reasoning, and then have to make it consistent, what you end up with is the opposite of the way arbitration awards normally get reviewed. Actually, as Verizon says, the ambiguity question usually doesn't come up with the arbitrator saying it's ambiguous. It usually comes up where something comes straight to the court. The court has to decide whether there is something that is too ambiguous in the award that has to be remanded for clarification, and understandably, the courts aren't and shouldn't be in the business of parsing the reasoning underlying the award. They just look at the result. They look at the arbitrator's holding. So let's take your example. If in your example, we have a holding that says we dismiss counts one, two, and three, and you read the opinion, and everyone else in the opinion says we dismiss counts two, three, and four, it's your position, nope, count one is dismissed, doesn't matter what the opinion said, doesn't matter how clear it is, doesn't matter what the rest of the In the arbitration context, I would have a shorter answer and a longer answer. The shorter answer is, in this case, like if you're, this is not a case where it was impossible to look at the opinion and find a basis for the original holding. The arbitrators, I don't want to get too deep into the weeds, but the arbitrators relied heavily on the Schedule 18. Schedule 18 only mentioned the category that they awarded to, which was the shares for which Destra served as the wholesaler. There was also evidence that basically Destra did their job, and the prior folks didn't, and they quit. They could have distinguished on that basis, but let me get past that. At a certain point, you know, there are extreme cases where something is in manifest disregard of the law, and if that were the claim here, we'd be dealing with a different case. But short of that, what the cases always say is that actually we're not looking for logical consistency, certainly not extreme logical consistency from arbitrators. There's plenty of cases saying that, for instance, the Exxon case that we cite says an arbitrator's decision need to be neither wise nor internally consistent. The Supreme Court says in Oxford Health Plans that we uphold arbitral awards, quote, good, bad, or ugly. I think Jen Ray says that the doctrine can apply, that there can be an ambiguity when the award is susceptible to more than one interpretation. Isn't that what we have here? I think that's right. And the question here, as the magistrate judge's opinion illustrates, is basically that the only way to get to ambiguity or susceptible to one interpretation is if you incorporate the opinion and try to line up the reasoning. You had just read the language that expressly incorporated the opinion into that holding section. Your Honor, with respect, I would not say that it expressly incorporated. It wasn't saying all of this is part of our holding. Based on the findings of fact and conclusions of law. To me, that doesn't sound like incorporation of the whole thing. And if it was, again, that would put courts reviewing arbitration awards in the position, if you interpret that sort of boilerplate as bringing the whole thing in. So, does it matter that you all, that the parties here negotiated for findings of facts and conclusions of law to be included in their award? Well, the way the arbitrators interpreted that correctly was they interpreted for a brief statement of reasons. But the doctrine doesn't turn on, there are plenty of cases where we want reasons, but the doctrine turns on whether they are changing the holding. And what you end up with here is... Does the doctrine say that? Holding, changing the holding? Is that what it says? Changing the award, but I think... This whole thing is called an interim award, right? Like the entire thing is an award. And if you're going to focus on one thing at the end, there is a section called interim award that once again says, this is based on the findings of fact and conclusions of law. I'm just struggling with how we ignore it. Yeah, and all that's fair enough, Your Honor, and I'm not vouching for the way this decision was constructed, but I think if you go back to what the functus officio doctrine actually says, and the purposes of it, and what it's supposed to apply to, it's functionally very clear that you focus on the decision and not... It's not... There's no magic to the word award. That interim award section refers to the quote, above described drip shares, close quote. How do we know what the above described drip shares is referring to? Because it's right there in the previous paragraphs of the holding, they're stating the holding, they state a category of drip shares, and they state... And so above described can only be read that way. Again, let me bring in, I guess I'm heavy on analogies today, but there's no question that it's a result that troubled the magistrate judge to the point where he basically said, I'm calling this ambiguous because I think it would be very wrong, there would be something very wrong about having a result that I think is so inconsistent with what they're meant to do. But what the parties bargained for is for the arbitrators to get one bite at the apple and make a decision, there's no guarantee that it's going to be correct. And even if the magistrate judge thought it was a harsh result to apply the doctrine there, it's not that different from statutory interpretation, contract interpretation, where there are cases where you have statutes where I'm thinking of the Supreme Court's Lamey case, I guess, where the court says basically the statute has a drafter's error. We think it's a drafter's error, but that's what the statute says. And until the words are ambiguous, we don't go and look at the legislative history. Okay, thanks. We'll hear you back on rebuttal. Good morning, your honors. May it please the court, I'm Laura McNally from Morgan Lewis, and I represent DESTRA. I'm joined by Mr. Pryor, who represents Triterra. I will focus my argument on why the court should affirm the district court's determination that the third exception applies here, and Mr. Pryor will be focusing on alternative grounds for affirmance. I'll start with the standard for ambiguity. And here, the report and recommendation as adopted by the district court used the standard found in the Sixth Circuit's Sterling-China case, which has been endorsed by the Third Circuit in footnote 43 of Verizon. Sterling-China explains that an ambiguity is present, one, when the award fails to address a contingency that later arises, or two, when the award is susceptible to more than one interpretation. Prospect's position is that there can be ambiguity only in the first instance, what it refers to as the award being too ambiguous to enforce. But this is just one way to identify an ambiguity. It's not the only way. An ambiguity can also arise kind of in the normal course, where the word itself can be subject to multiple interpretations. Now, Prospect's response to all of this is to say that even if Sterling-China applies, an ambiguity can only be found by looking to the holding. You should ignore the rest of the award. But the holding here is not unambiguously in Prospect's favor. The holding starts out by expressly stating it's based on the findings of fact and inclusions of law stated below. And I think that that is an express adoption of the findings and fact and conclusions of law below. The holding goes on to state that claimants get fees on drip shares in lieu of cash dividends that would have otherwise been due on the shares for which DCI served as sub-wholesaler. But the holding doesn't tell the reader what drip shares are, what it means to be a sub-wholesaler. And to understand the term, shares for which DCI served as a sub-wholesaler, you have to read the holding in connection with Schedule 1118. You have to kind of keep the two next to each other. And when you put Schedule 1118 next to the holding, one reasonable interpretation is that Destre acted as sub-wholesaler for all drip shares following the party's entry into the third agreement in May 2018. Prospect points to the language in the last paragraph of the holding that all other claims and relief sought are dismissed. But this comes right after a language that fees are to be distributed in accordance with Schedule 1118 as interpreted here in referring to the rest of the award. My point being that the holding itself here is not this model of, is not even a model of clarity. Even if it were, there's no legal support for just looking at the holding to determine whether there is an ambiguity. Prospect relies heavily on the Supreme Court's 1960 decision in Enterprise Wheel. And in that decision, and this language is then used again in Verizon, the Supreme Court notes, a mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the   But no one here is arguing that language outside of the holding suggested that the panel exceeded their authority, which that was the issue in Enterprise Wheel, did the panel exceed their authority? That's not an issue here. So ultimately, there's no case which would support just looking at the holding and having the court kind of put blinders on to everything that's outside of the holding. Counsel, let me ask you, sort of take you in a different direction. Your friends on the other side seem to argue that the Supreme Court's recent case in Morgan v. Sundance might affect the applicability of the functus officio doctrine. Can you just respond to that? So that is actually a topic to be covered by Mr. Pryor, if the court would allow me to digress to him. I think his hearing is not 100% today. So apologies. That's all right. So the other piece on the ambiguity that I'll touch on is that, and I think this was a point that Your Honor raised, was that here the parties bargained for an award that shall briefly state the findings of fact and conclusions of law on which it is based. And that brief statement of the findings of fact and conclusions of law, that's not in the holding. There are no findings of fact and conclusions of law in the holding. You have to then read the rest of the award, which is divided into parts about findings of fact and conclusions of law that are then clearly part of the entire award, which is what the parties bargained for. So there's not any legal support in the case law for just looking at the holding. And there's not any support with respect to the parties' agreement as to what they bargained for to only look at the holding. Can you point us to where in the opinion the panel said that Pervasi issued shares should be included in the scope of the award? Sure. So the panel very much points to Schedule 1118. Yeah. And when you look at Schedule 1118, line C is the line for fund shares issued and outstanding through district capital investments LLC acting as the wholesaler. This is in the appendix at page 166. And if you kind of follow the math in Schedule 1118, you have to start, you know, line A is overall fund shares issued and outstanding. So that would be at any point in time. Today, for the number, you know, here, the example is 1.75 million. Then you have fund shares issued and outstanding prior to May 11, 2018. Those are necessarily anything that would have come from Pervasi because Pervasi is, Dexter wasn't in the picture prior to May 11, 2018. So the, walking through Schedule 11.18 necessarily calls for under, you know, calls for embracing the Pervasi shares and the drip coming from those shares. And then here we also have the, following the lines down, we have the Dexter fee party shares and the Dexter fee party shares. So that's where I think really just holding, if you take 1118 and read it next to the holding, that's why we say even the holding when it uses the language, fund shares issued and outstanding through Dexter Capital Investments LLC acting as sub-wholesaler. That's necessarily any of the new shares, whether it's through offerings or drip that's occurring after May 2018. And that language matches what's in the holding. So it's, you know, it nicely lines up with what's in the holding there. I have two minutes left. I will speak for a moment about the deference to be afforded to the arbitration panel, if that would be of interest to the court. I think that was another issue that came up. My friends at Prospect say that an arbitrator should not be entitled to any deference whatsoever on whether functus officio applies. And Prospect puts claimants at the other extreme of saying, just offer total deference to the arbitrator when, like here, you actually have the panel which has evaluated functus officio in their second award. I think wherever the court lands on the level of deference to be afforded to the arbitration panel and the determination of whether functus officio applies, I don't think it matters here. Because here you have the court below independently making a determination on ambiguity. And in the report and recommendation, the arbitrator's finding on functus officio is just one of many factors. And the magistrate there said, you know, I find independently that there's ambiguity. And the district court did the same thing, said I find independently that there's ambiguity. I'm not just relying on what the arbitrators did here. So I think that under those circumstances, it doesn't really matter which level of deference we give. If we give some, all, none, a little bit under the circumstances given Verizon, here there is still ambiguity as found independently by the court below. And our standard of review for that decision is de novo? Yes. Okay. Thank you, Your Honors.  May it please the court, I'm Bobby Pryor. I represent the Appley and Cross Appellant Stratera. We have four cross appeal issues. I'd request leave to reserve two minutes of my time for rebuttal. Actually, only Mr. Fader gets to reserve. Asked for, Your Honor? Actually, only Mr. Fader gets to reserve rebuttal time.  Do you want me to take my six minutes now? I'm sorry, I just can't quite hear. Yes, you should take all of your time now. Okay. Let me start with the question raised by Judge Montgomery Reeves. And also, I'll start with Morgan. And it is our position that common law functus officio is inconsistent with Morgan. In Morgan, the Supreme Court was dealing with an issue of a procedure that preferred arbitration. And they struck it down. But the basis for striking it down, and Justice Kagan says this repeatedly in a short opinion, is that the policy is to make arbitration agreements as enforceable as other contracts. And here, as counsel has acknowledged, the parties agreed to the AAA rules. The AAA rules in Rule 50 have functus officio. They also have Rule 7A. And Rule 7A says that the arbitrators determine their jurisdiction. And what Prospect is arguing, or arguing it through Verizon, I don't necessarily agree with that interpretation, but their argument is that this court is a gateway court on that issue. That that's not for the arbitrators to decide. And in fact, they argue there's no deference. And in fact, what the parties have agreed to are the AAA rules. The parties have agreed to have the arbitrators decide functus officio. The common law that doesn't let them do that and doesn't give deference to them is inconsistent with Morgan. Does that mean functus officio is dead? No. Functus officio still lives through Rule 50. And when it's presented to the arbitrators, they're the ones that make that decision. Does this court have a role? It does. It has the Oxford Health Care Standard of Deference. And when that comes up to you, if they've ignored the law, if they've been irrational in the way they interpret functus officio, then you vacate. You handle this issue like any other issue that comes up to the court. And there are three circuits that have addressed this. And you've got the Eastern Seaboard case in the First Circuit, the Second Circuit case of TECO Metals, and the Fifth Circuit case of RSM. It's 117 Fed Forth 707. I mention that site because it's not cited in our brief. But all three of those circuits say you give deference to the panel in their determination of functus officio. And if you do that here, Order 22 is certainly not irrational. They analyze the law. Even if they're seriously wrong, this should be upheld. Common law functus officio is inconsistent with Morgan, and frankly, it's inconsistent with federal common law. Federal common law is a gap filler at most, and there's no gap to be filled here. The IBEWV Verizon case and the 11th Circuit 2015 case, they discussed this. And the argument was made that common law functus officio doesn't exist anymore. And the court said, I don't have to decide that issue because the party's agreement controls, and we're going to interpret it through Rule 50. It may have been Rule 40 in that case, but the same rule that we're dealing with here. Okay. My next issue is Exception 2 to functus officio. And we certainly agree with Ms. McNally that the third exception applies. This is an ambiguous award. The arbitrators found that. The magistrate found that. The district court found that. And they found it without applying a deference standard. But if this court determines that it's not ambiguous, that panel also found that Exception 2 applies, and that is that it didn't resolve all submitted issues. And here, that would be the case because they didn't then address all drip. We cite to the court your opinion in TRANSTAC, and in that case, the arbitrator in his first decision failed to substantively address a major issue. It was a tax liability issue. And in a second award, the arbitrator addresses it. And this court found the fact that it was a major issue and you didn't deal with it in the first opinion is sufficient to say there's an ambiguity as to whether all issues were resolved. Prospect responds, well, there's language in the opinion that says all claims not addressed are denied. That's that kind of broad, generic language. And they cite two cases, the Wines case and the Marion case, New Jersey state court cases. Neither of those cases dealt with ambiguity and that's significant. They were dealing with the first exception, defunctus officio. And when you deal with ambiguity, the Eastern Seaboard Lavalle Plaza case say that no, you look, it's just a piece of the puzzle. Now, our next issue is consent to jurisdiction. Well, back to exception two. The panel said that it made its conclusions as to claims and relief sought and only reserved the issue of the remedy. Right. So the Eastern Seaboard and Lavalle Plaza were both dealing with similar language, Your Honor. And they both, it's a piece of the puzzle when you're looking at ambiguity. There's no way they would have included that language if they realized they were leaving in an ambiguity. I think I'm out of time. That's okay. You can cover your third point. And I apologize. Let me just cover the one more issue. The consent to jurisdiction is an important issue here because the panel in the interim award found that we were the prevailing party. It's an important issue. We won. In Delaware, they could have said there are no prevailing parties. But they didn't. We won. We gave our fee information to prospect. They raised objections to it like you would normally see. But they did something else. They asked the panel to change the interim award. That award that they say is subject to functus officio, they said claimants are not the prevailing party. It starts on apex 920. And they go on page after page explaining why that's wrong. And when you ask to change that, you submit jurisdiction back to the panel. Thank you. I think I'm out of time. I couldn't remember. Thank you. Thank you, your honor. Sorry to bring my computer up here. But that's where I have the schedule 11.18 the council was referring to. And there was some suggestion that that couldn't be applied. That somehow made the otherwise clear holding ambiguous. So I just wanted to mention it's on. That's when I asked about where in the opinion you find a reference to the provost issued drift shares. Right. And your friend says, well, it's right in schedule 11.18. Right. But there's not actually, if you look at it, it's on page 166 of the appendix. There isn't a reference to the privacy drip shares. Certainly by name. The only thing that's here by name is fund shares issued and outstanding through Destra acting as a sub wholesaler. And so that's the question, whether there was somehow be some difficulty or ambiguity in applying that schedule to what they actually ruled. There isn't. There is one line that corresponds exactly to their holding. I think the argument was that shares issued after 2018 include the privacy share. So, okay. The share is issued after that. November 2, 2019. If that's about just when a particular offering closed. But actually, let me refer back to the holding since obviously the question as to whether there was some suggestion that it might not be clear. I think, again, if you just read it, particularly if you imagine this case coming up without arbitrators having changed their minds, and this just came up straight from the initial award, you know, what they call the interim award and a court had to decide whether it was ambiguous. I think it would be clear that a court would say there's nothing ambiguous about it. What it says very clearly is. Basically, we identify one breach by respondents. They breached by not including the. Drip shares and live cash dividends that would have otherwise been due on the shares for which destress served as wholesaler. That's the one category of liability. You then have. Indented under it. ABCD, how that then will be effectuated. You'll what you'll pay for it. And all other claims and relief. So are dismissed now. I mean, that's pretty clear. I think that is also worth mentioning. The arbitrators themselves recognize. That that was their holding and that they needed to change it. If you look at their. Order 22, where they explain what they're doing. They're. You know, quite open about the fact that they say we made a mistake. Question is whether we can correct it. And, you know, they treat the holding is what it was, which is the holding. It's just their position that they can. Clarify the holding by bringing it into line with what they really meant. And our position under the doctrine is. You don't get to do that. That's not ambiguous. That is not clerical and not typographical. You get one bite at the apple. Thank you. Okay, thank you. We'll take the matter under.